UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

SCOTT JOHNSON,

           Plaintiff,

     v.

WAYSIDE PROPERTY, INC., a
California Corporation, and
J&C M HOLDING, INC., a
California Corporation,

           Defendants.

CIV. NO. 2:13-1610 WBS AC

MEMORANDUM AND ORDER RE: MOTION
FOR SUMMARY JUDGMENT

----oo0oo----

       Plaintiff Scott Johnson, who is wheelchair-bound,
brought this action against defendants Wayside Property, Inc.,
and JC&M holding, Inc., the owners of Wayside Lumber.  Plaintiff
alleges that he encountered several barriers to access when he
attempted to purchase wood at Wayside Lumber and asserts that
these barriers to access violate the Americans with Disabilities
Act, 42 U.S.C. § 12101 et seq. ("ADA") and California law.
Plaintiff now moves for summary judgment pursuant to Federal Rule

1

1    of Civil Procedure 56.

2    I.    Factual & Procedural History

3            Plaintiff is disabled and requires a wheelchair for

4    mobility.  (Johnson Decl. ¶ 2 (Docket No. 11-4.)  In June 2013,

5    plaintiff visited Wayside Lumber, a store operated by defendants,

6    on two occasions to purchase items for a project.  (Id. ¶ 5.)

7    When plaintiff arrived at Wayside Lumber, he found that the only

8    handicapped parking space was located on the far side of the lot,

9    had faded signage, and did not have sufficient clearance for his

10   wheelchair lift.  (Id. ¶ 6-7.)  The entrance to Wayside Lumber

11   was equipped with a panel-style door handle, which plaintiff

12   found difficult to use.  (Id. ¶ 8.)  And when plaintiff went

13   inside the store to make purchases, the transaction counter was

14   too high for him to reach comfortably.  (Id. ¶ 9.)

15           On July 23, 2013, Noah Leiter, an investigator with the

16   Center for Disability Access, visited Wayside Lumber to conduct a

17   site inspection.[1]  (Leiter Decl. ¶ 3 (Docket No. 11-5.)  Leiter

18   _____

19           [1]    Defendants object to Leiter's declaration on the basis
     that he was not disclosed as an expert witness.  (See Defs.'
20   Opp'n at 1 (Docket No. 14-1).)  However, Leiter does not offer
     expert testimony; rather, his testimony is premised on his
21   personal knowledge and observation of Wayside Lumber during two
     site inspections.  See Fed. R. Evid. 701.  And Leiter's
22   declaration, in which he simply states what he observed on those
     two visits, is plainly not hearsay.  See Fed. R. Evid. 801(c)(1).
23   The court overrules these objections.
             Defendants also object to a Certified Access Specialist
24   ("CASp") report offered by plaintiff on the basis that it is
     hearsay and inadmissible expert testimony.  (Defs.' Opp'n at 2.)
25   The court does not rely on the CASp report and therefore
     overrules these objections as moot.  Defendants rely on Colo.
26   Cross Disability Coal. v. Hermanson Family Ltd. P'ship I, 264
     F.3d 999, 1005 (10th Cir. 2001), in support of the proposition
27   that a plaintiff must submit expert testimony to prevail on an
     ADA claim.  But that holding does not reflect the law of the

28

                                   2

1   indicates that the only handicapped parking space was not marked
2   as van-accessible, did not have a designated access aisle, had
3   faded paint, had no blue border or wheelchair logo, and was
4   located across a vehicular drive path from the building.  (Id. ¶¶
5   4-6.)  He found that the door had a panel-style handle.  (Id. ¶
6   6.)  And when he measured the transaction counter, he found that
7   the counter was between 42 and 45 inches in height across its
8   entire length.  (Id. ¶ 8.)

9          Plaintiff filed this action on August 5, 2013, and
10  asserted four claims for: (1) violations of the ADA, 42 U.S.C. §
11  12101 et seq.; (2) violations of the Unruh Civil Rights Act, Cal.
12  Civ. Code §§ 51 et seq.; (3) violations of the California
13  Disabled Persons Act, Cal. Civ. Code § 54; and (4) common-law
14  negligence.  Six days after they received the Complaint,
15  defendants retained a Certified Access Specialist and scheduled a
16  site inspection.  (McVey Decl. ¶ 3 (Docket No. 14-2).)  Less than
17  a month later, defendants took several steps to remedy the
18  alleged violations: they relocated and repainted the handicapped
19  parking spaces, installed new door handles, and set up an area of
20  the transaction counter with distinctive signage and a clipboard
21  for disabled patrons.  (Id. ¶¶ 4-6.)  On May 29, 2014, Leiter
22  returned to Wayside Lumber and confirmed that defendants had
23  modified their handicapped parking area and door handle.  (Leiter
24  Decl. ¶¶ 10-11.)  Plaintiff now moves for summary judgment on his

25

26  _____

27  Ninth Circuit, which has explicitly held that a plaintiff may
    prevail on an ADA claim using only evidence based on personal
    knowledge and observation.  Strong v. Valdez Fine Foods, 724 F.3d
28  1042, 1046 (9th Cir. 2013).

1  ADA and UCRA claims pursuant to Rule 56.[2]  (Docket No. 11.)

2  II.  <u>Discussion</u>

3        Summary judgment is proper "if the movant shows that

4  there is no genuine dispute as to any material fact and the

5  movant is entitled to judgment as a matter of law."  Fed. R. Civ.

6  P. 56(a).  A material fact is one that could affect the outcome

7  of the suit, and a genuine issue is one that could permit a

8  reasonable jury to enter a verdict in the non-moving party's

9  favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248

10  (1986).  The party moving for summary judgment bears the initial

11  burden of establishing the absence of a genuine issue of material

12  fact and can satisfy this burden by presenting evidence that

13  negates an essential element of the non-moving party's case.

14  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).

15  Alternatively, the moving party can demonstrate that the non-

16

17        [2]   In his motion for summary judgment, plaintiff indicates
    that he will stipulate to the dismissal of his California

18  Disabled Persons Act and common-law negligence claims "to ensure
    that this motion disposes of the entire case." (Pl.'s Mem. at 7

19  (Docket No. 11-1).)  As a preliminary matter, the "stipulation"
    was not signed by both parties.  It is therefore effective only

20  to the extent that the Federal Rules of Civil Procedure permit
    plaintiff to unilaterally dismiss those claims.

21        As the Ninth Circuit has made clear, Federal Rule of

22  Civil Procedure 41(a)(1) "does not allow for piecemeal
    dismissals.  Instead, withdrawals of individual claims against a

23  given defendant are governed by Fed. R. Civ. P. 15, which
    addresses amendments to pleadings." <u>Hells Canyon Preservation</u>

24  <u>Council v. U.S. Forest Serv.</u>, 403 F.3d 683, 687 (9th Cir. 2005);
    <u>see generally</u> 8 <u>Moore's Federal Practice</u>, § 41.21[2] (Matthew

25  Bender 3d ed.).  Plaintiff has not explained why dismissal of his
    California Disabled Persons Act and negligence claims satisfies

26  the standards set forth by Rule 15; accordingly, the court will
    not dismiss those claims at this juncture.  Of course, the

27  parties are free to discuss this issue further and to stipulate

28  jointly to the dismissal of these claims.

                                4

1  moving party cannot produce evidence to support an essential

2  element upon which it will bear the burden of proof at trial.

3  Id.

4       Once the moving party meets its initial burden, the

5  burden shifts to the non-moving party to "designate 'specific

6  facts showing that there is a genuine issue for trial.'"  Id. at

7  324 (quoting then-Fed. R. Civ. P. 56(e)).  To carry this burden,

8  the non-moving party must "do more than simply show that there is

9  some metaphysical doubt as to the material facts."  Matsushita

10 Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

11 "The mere existence of a scintilla of evidence . . . will be

12 insufficient; there must be evidence on which the jury could

13 reasonably find for the [non-moving party]."  Anderson, 477 U.S.

14 at 252.

15      In deciding a summary judgment motion, the court must

16 view the evidence in the light most favorable to the non-moving

17 party and draw all justifiable inferences in its favor.  Id. at

18 255.  "Credibility determinations, the weighing of the evidence,

19 and the drawing of legitimate inferences from the facts are jury

20 functions, not those of a judge . . . ruling on a motion for

21 summary judgment . . . ."  Id.

22      A.   Americans with Disabilities Act

23      The ADA was enacted in 1990 to "remedy widespread

24 discrimination against disabled individuals," PGA Tour, Inc. v.

25 Martin, 532 U.S. 661, 674 (2001), and permits private lawsuits

26 against businesses that fail to accommodate individuals with

27 disabilities, 42 U.S.C. § 12188(a).  In order to prevail on an

28 ADA claim, a "plaintiff must show that (1) she is disabled within

5

1  the meaning of the ADA; (2) the defendant is a private entity

2  that owns, leases, or operates a place of public accommodation;

3  and (3) the plaintiff was denied public accommodations by the

4  defendant because of her disability."  Molski v. M.J. Cable,

5  Inc., 481 F.3d 724, 730 (9th Cir. 2007).  Defendants do not

6  dispute that plaintiff satisfies the first two elements.

7        "The third element--whether [a plaintiff is] denied

8  public accommodations on the basis of disability--is met if there

9  was a violation of applicable accessibility standards."  Moeller

10  v. Taco Bell Corp., 816 F. Supp. 2d 831, 847 (N.D. Cal. 2011);

11  see Chapman v. Pier 1 Imps. (U.S.), Inc., 631 F.3d 939, 945 (9th

12  Cir. 2011) (en banc).  Those standards are set forth by the ADA

13  Accessibility Guidelines ("ADAAG"),[3] which "provide[] the

14  objective contours of the standard that architectural features

15  must not impede disabled individuals' full and equal enjoyment of

16  accommodations."  Chapman, 631 F.3d at 945; see 28 C.F.R. pt.

17  _____

18        [3]    The Department of Justice ("DOJ") promulgated the ADAAG
   in 1991 and revised it in 2010.  See Kohler v. Flava Enters.,
   Inc., 826 F. Supp. 2d 1221, 1229 (S.D. Cal. 2011).  All

19  architectural and structural elements in a facility are required
   to comply with the 1991 Standards to the extent that compliance

20  is readily achievable; by contrast, the 2010 standards apply only
   to elements that have been altered in existing facilities, or

21  that fail to comply with the 1991 Standards, on or after March

22  15, 2012.  28 C.F.R. § 36.304(d)(1)-(2).
        There is no evidence that defendants constructed or

23  made any structural alterations to Wayside Lumber between March
   15, 2012 and June 4, 2013, the first date on which plaintiff

24  visited the store.  Under the "safe harbor" provision of the
   applicable regulations, defendants are therefore only liable for

25  architectural barriers that failed to comply with the 1991
   Standards.  28 C.F.R. § 36.304(d)(2)(i).  But because defendants

26  made architectural modifications to Wayside Lumber after
   plaintiffs filed this lawsuit, the court must apply the 2010

27  standards to determine whether those modifications have remedied

28  the alleged ADA violations.  See id.

1   1191 (2010 Standards); 28 C.F.R. pt. 36, App. D (1991 Standards).

2           Although the ADA does not mandate removal of structural

3   barriers in existing facilities where removal is not "readily

4   achievable," 42 U.S.C. § 12182(b)(2)(A)(iv), even minor or

5   technical violations of access standards are a per se violation

6   of the ADA when removal is readily achievable, Chapman, 639 F.3d

7   at 945.  Indeed, its requirements are as "precise as they are

8   thorough, and the difference between compliance and noncompliance

9   with . . . the ADA is often a matter of inches."  Id. at 945-46.

10              1.   Violations of the ADA

11          Plaintiff identifies three ADA violations that he

12  encountered at Wayside Lumber.  First, under the 1991 Standards,

13  any business that provides parking spaces must provide handicap

14  parking spaces.  28 C.F.R. pt. 36, App. D, § 2.2.  Among other

15  requirements, the 1991 Standards mandate that those parking

16  spaces "shall be located on the shortest accessible route of

17  travel from adjacent parking to an accessible entrance."  Id. §

18  4.6.2.  Plaintiff indicates that when he visited Wayside Lumber

19  in June 2013, he was forced to park in a "faded parking space"

20  that was "located across a vehicular drive path," rather than

21  adjacent to the building.  (Johnson Decl. ¶ 6.)  Plaintiff has

22  also submitted a photograph showing a faded handicap parking

23  space located on the opposite side of the parking lot from the

24  store entrance.  (Docket No. 11-7.)  Defendants have not

25  submitted any evidence showing that the parking space complied

26  with the ADA, and admit that "[it] is undisputed that Mr. Johnson

27  encountered parking lot issues."  (Defs.' Statement of Undisputed

28  Facts ¶ 10 (Docket No. 14).)

1    Second, the 1991 Standards require that all door

2    hardware "shall have a shape that is easy to grasp with one hand

3    and does not require tight grasping, tight pinching, or twisting

4    of the wrist to operate."  28 C.F.R. pt. 36, App. D, § 4.13.9.

5    When plaintiff visited Wayside Lumber in June 2013, he found that

6    the door had a "panel style" handle that was difficult for him to

7    grasp.  (Johnson Decl. ¶ 8.)  Plaintiff submits a photograph

8    showing this door handle.  (Docket No. 11-7.)  As with the

9    parking space, defendants do not submit any evidence showing that

10   the door handles were ADA-compliant.

11   Finally, the 1991 Standards require that any

12   transaction counter used for sale or distribution of goods or

13   services to the public have a section with a maximum height of 36

14   inches.  28 C.F.R. pt. 36, App. D, § 7.2(1).  Plaintiff states

15   that when he visited Wayside Lumber, the transaction counter was

16   "too high."  (Johnson Decl. ¶ 9.)  Leiter subsequently visited

17   Wayside Lumber on July 23, 2013, took measurements, and

18   determined that the entire length of the transaction counter

19   measured between 42 and 45 inches in height.  (Leiter Decl. ¶ 8.)

20   When Leiter returned to Wayside Lumber on May 29, 2014, he found

21   that the counters were no lower than 42 inches in height.  (Id. ¶

22   11.)  Although the parties dispute whether defendants have

23   remedied the barrier presented by the transaction counter, see

24   infra II.A.2, defendants do not submit any evidence showing that

25   the counter height complied with the 1991 Standards on either of

26   plaintiff's two visits to Wayside Lumber in June 2013.

27   The Department of Justice has promulgated a regulation

28   in which it lists removal of all three barriers--inadequate

8

1  handicapped parking, unlawful door hardware, and an excessively

2  high transaction counter--as "examples of steps to remove

3  barriers."  28 C.F.R. §§ 36.304(b)(3), (11), (18).  Whether or

4  not that regulation establishes a presumption that those forms of

5  barrier removal are readily achievable,[4] plaintiff contends that

6  removal was readily achievable because defendants actually

7  removed the barriers.  Leiter returned to Wayside Lumber on May

8  29, 2014, and conducted another site inspection.  (Leiter Decl. ¶

9  10.)  During that inspection, he noted that defendants had

10  designated two spots adjacent to the entrance as disabled parking

11  spaces and had installed U-shaped handles on the front door.

12  (Id.)  Plaintiff has submitted photographs documenting these

13  changes.  (Docket No. 11-8.)

14         Defendants do not deny that they made these changes; to

15  the contrary, McVey avers that the parking area and door hardware

16  "were corrected and made ADA compliant" within thirty days after

17  being served with this lawsuit.  (McVey Decl. ¶ 4.)  Because

18  defendants were able to alter their facility to comply with the

19  ADA within a month, there is no genuine dispute that the changes

20  it implemented were "readily achievable."  See Wilson v. Pier 1

21

22       [4]  While plaintiff asserts that "[t]he barriers in this
    case are on the list of barriers the Department of Justice has
23   identified as presumably readily achievable to remove," (Pl.'s
    Mem. at 8:24-25), plaintiff cites no authority in support of this
24   reading of the regulation.  To the contrary, at least one court
    has held that this regulation establishes no such presumption.
25   Manning v. Kaiser Found. Health Plan, Inc., Civ. No. 03-5905 PJH,
    2006 WL 2168877, at *9 (N.D. Cal. July 31, 2006).  Because the
26   court determines that the removal of the barriers was readily
    achievable on other grounds, it need not decide whether the
27   regulation establishes a presumption that these forms of barrier
    removal are readily achievable.
28

1    Imps. (US), Inc., 439 F. Supp. 2d 1054, 1069 (E.D. Cal. 2006)

2    (Karlton, J.) ("Given that the barrier has already been cured,

3    the court must find that [removal] was readily achievable, and

4    thus that it violated the ADA . . . ."). Accordingly, plaintiff

5    has demonstrated that defendants failed to comply with the ADA.

6              2.   Equivalent Facilitation

7          Under the ADA and its implementing regulations, the

8    only remedies available to a private plaintiff are injunctive

9    relief and attorneys' fees. 42 U.S.C. § 12188(a); 28 C.F.R. §§

10   36.501, 36.505; Antoninetti v. Chipotle Mexican Grill, Inc., 643

11   F.3d 1165, 1174 (9th Cir. 2010) ("Injunctive relief is the sole

12   remedy available to private parties under the [Americans with]

13   Disabilities Act; it does not authorize a claim for money

14   damages."). "Because a private plaintiff can sue only for

15   injunctive relief (i.e. for removal of the barrier) under the

16   ADA, a defendant's voluntary removal of alleged barriers prior to

17   trial can have the effect of mooting a plaintiff's ADA claim."

18   Oliver v. Ralphs Grocery Co., 654 F.3d 903, 905 (9th Cir. 2011);

19   accord Hubbard v. 7-Eleven, Inc., 433 F.Supp.2d 1134, 1145 (S.D.

20   Cal. 2006).

21         As explained above, defendants made several changes to

22   Wayside Lumber after plaintiff filed this action: they re-painted

23   the parking lot, installed new door hardware, and established a

24   separate area of the transaction counter with clipboards and

25   distinctive signage for disabled patrons. (McVey Decl. ¶¶ 4-6.)

26   As a result of these changes, defendants contend that plaintiff's

27   ADA claim is moot; because they have already made Wayside Lumber

28   ADA-compliant, defendants argue, there is no need for injunctive

10

1  relief to compel compliance.  Plaintiff concedes that defendants'

2  parking lot and door handles now comply with the ADA, but

3  disputes that the transaction counter is ADA-compliant.  (See

4  Pl.'s Mem. at 8 (Docket No. 11-1); Leiter Decl. ¶ 11.)

5          Plaintiff's principal support for this claim consists

6  of a declaration in which Leiter documents a site inspection he

7  conducted on May 29, 2014.  (Leiter Decl. ¶¶ 10-11.)  When Leiter

8  returned to Wayside Lumber that day, he noted that the

9  "transaction counters inside the store . . . are still no lower

10 than 42 inches in height," and that [t]here are no lowered, 36

11 inch high transaction counters."  (Id. ¶ 11.)  Plaintiff also

12 submits photographs taken by Leiter, none of which show a lowered

13 transaction counter.  (Docket No. 11-8.)

14         In response, defendants offer a declaration from Kevin

15 McVey, the general manager of Wayside Lumber, and six photographs

16 of the transaction counter.  According to McVey, defendants

17 established an area of the transaction counter for use by

18 disabled patrons within thirty days of being served with the

19 complaint in this action.  (McVey Decl. ¶ 6 (Docket No. 14-2).)

20 That area contains two blue signs with the handicap-accessible

21 symbol and the message "WE ARE PLEASED TO PROVIDE ASSISTANCE IF

22 YOU NEED HELP PLEASE ASK" in white letters.  (Docket No. 14-3.)

23 That area also contains a clipboard with the label "ADA" on it.

24 (Id.)  McVey indicates that he has instructed all employees to

25 ensure that disabled patrons have complete access to this area of

26 the transaction counter and are offered use of the clipboard.

27 (McVey Decl. ¶ 6.)  While defendants concede that they have not

28 installed a lowered transaction counter, they contend that these

11

1  changes satisfy the ADAAG's "equivalent facilitation" provision
2  and therefore comply with the ADA.

3       The "equivalent facilitation" provision of the 2010
4  Standards provides that "[n]othing in these requirements prevents
5  the use of designs, products, or technologies as alternatives to
6  those prescribes, provided they result in substantially
7  equivalent or greater accessibility and usability."  28 C.F.R.
8  part 1191, app. B.  Relying on several cases from district courts
9  in California, defendants contend that the use of a clipboard for
10 disabled patrons is an acceptable substitute for lowered counters
11 under the ADAAG or its state-law analogues.  See, e.g., Lieber v.
12 Macy's W., Inc., 80 F. Supp. 2d 1065, 1075 (N.D. Cal. 1999)
13 (ADAAG); Kohler v. Presidio Int'l, Inc., Civ. No. 10-4680 PSG
14 PJWx, 2013 WL 1246801, at *10 (C.D. Cal. Mar. 25, 2013) (Title 24
15 of the California Health & Safety Code); Shimozono v. May Dep't
16 Stores Co., Civ. No. 00-4261 WJR AJWx, 2002 WL 34373490, at *16
17 (C.D. Cal. Nov. 20, 2002).

18      That line of cases appears inconsistent with DOJ's
19 position that the use of a clip board in lieu of lowered counters
20 is permitted only "until more permanent changes can be made."
21 U.S. Dep't of Justice, ADA Update: a Primer for Small Business 15
22 (2011).  DOJ expressed this view in a technical assistance
23 manual, which it promulgated pursuant to its statutory obligation
24 to "provi[de] appropriate technical assistance manuals  to
25 individuals or entities with rights or duties" under the
26 Americans with Disabilities Act.  42 U.S.C. § 12206(c)(3).  Its
27 view in this manual, which purports to interpret the 2010 ADAAG,
28 is substantially identical to one in a similar manual

1   interpreting the 1991 ADAAG.  See U.S. Dep't of Justice,

2   Americans with Disabilities Act: ADA Guide for Small Businesses

3   11 (1999) ("If you cannot provide an accessible sales or service

4   counter or auxiliary counter nearby . . . you may provide a clip

5   board or lap board for use until a more permanent solution can be

6   implemented.").

7           As the Ninth Circuit has made clear, positions taken by

8   DOJ in technical assistance manuals that purport to interpret the

9   ADAAG are "entitled to substantial deference" and "will be

10  disregarded only if plainly erroneous or inconsistent with the

11  regulation." Miller v. Cal. Speedway Corp., 536 F.3d 1020, 1028

12  (9th Cir. 2008) (holding that ADA technical manual setting forth

13  guidelines governing lines of sight at sporting events was

14  entitled to deference); Botosan v. Paul McNally Realty, 216 F.3d

15  827, 834 (9th Cir. 2000) (holding that ADA technical manual

16  setting forth guidelines on ADA compliance obligations in the

17  context of commercial leases was entitled to deference); see

18  generally Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512

19  (1994) (describing level of deference accorded to agency

20  interpretations of their own regulations).  In the absence of any

21  indication that the position adopted by DOJ in this manual is

22  inconsistent with the ADAAG or any other regulation, the court

23  must defer to DOJ's view that a clipboard is appropriate only as

24  a temporary measure and is ipso facto not an equivalent

25  facilitation.[5]  See Miller, 536 F.3d at 1028.

26  _____
            [5]    At oral argument, defendants' attorney suggested that
27  the court should defer instead to those district courts that have
    concluded that a clipboard constitutes equivalent facilitation.
28  Unlike the decisions of the Supreme Court and the Ninth Circuit,

1    In short, there is no genuine dispute that defendants

2  failed to comply with the ADA and that plaintiff encountered at

3  least three discrete ADA violations when he visited Wayside

4  Lumber.  There is also no genuine dispute that defendants have

5  failed to install an ADA-compliant transaction counter; to the

6  extent that defendants claim they need not do so, that position

7  is based on a line of cases that is not binding upon this court

8  and is inconsistent with DOJ's consistent interpretation of the

9  ADAAG.  See id.  Accordingly, the court must grant plaintiff's

10 motion for summary judgment on his ADA claim.

11    B.    Unruh Civil Rights Act

12    The UCRA provides, in relevant part, that every person

13 is "entitled to the full and equal accommodations, advantages,

14

15 those decisions are not binding on this court.  See NASD Dispute
   Resolution, Inc. v. Judicial Council of Cal., 488 F.3d 1065, 1069
16 (9th Cir. 2007).

17    Even if they were, however, it is not at all clear that
   they would trump the position expressed in this technical
18 assistance document.  The Supreme Court has held that a "court's
   prior judicial construction of a statute trumps an agency
19 construction otherwise entitled to Chevron deference only if the
   prior court decision holds that its construction follows from the
20 unambiguous terms of the statute and thus leaves no room for
   agency discretion."  Nat'l Cable & Telecomms. Ass'n v. Brand X
21 Internet Servs., 545 U.S. 967, 982 (2005).  By its own terms,
   Brand X only addresses the degree of deference owed to agencies'
22 statutory interpretations, and does not dictate that an agency's
   interpretation of its own regulations would supersede a contrary
23 judicial construction of that regulation.  But while neither the
   Supreme Court nor the Ninth Circuit have expressly addressed
24 whether Brand X's holding is applicable to interpretive rules or
   guidance documents, at least two judges of the Ninth Circuit have
25 suggested that "there is 'no reason why these principles should
   not apply equally to the interpretation of a regulation.'"
26 Shahinyan v. Holder, 518 Fed. App'x 545, 547 (9th Cir. 2013)
27 (Ikuta, J., specially concurring) (quoting Levy v. Sterling
   Holding Co., 544 F.3d 493, 502 (3d Cir. 2008)).
28
                              14

1  privileges, or services in all business establishments of every

2  kind whatsoever" notwithstanding his or her disability.  Cal.

3  Civ. Code. § 51(b).  The UCRA "incorporates the substantive

4  standards of the ADA and creates a private right of action as a

5  matter of state law." Dep't of Fair Emp't & Hous. v. Law School

6  Admission Council Inc., 896 F. Supp. 2d 849, 865 (N.D. Cal.

7  2012); Cal. Civ. Code § 51(f) ("A violation of the right of any

8  individual under the federal Americans with Disabilities Act of

9  1990 . . . shall also constitute a violation of this section.").

10       Unlike the ADA, however, the UCRA permits plaintiffs

11  aggrieved by barriers to access to recover damages.  Cal. Civ.

12  Code § 52(a); Munson v. Del Taco, Inc., 46 Cal. 4th 661, 669

13  (2009).  And even if a defendant has removed barriers to access

14  and thereby mooted the plaintiff's ADA claim, those remedial

15  measures will not moot a UCRA claim for damages.  Wilson, 439 F.

16  Supp. 2d at 1069 (citing Grove v. De La Cruz, 407 F. Supp. 2d

17  1126, 1131 (C.D. Cal. 2005)).

18       As the court has explained, see supra II.A.1, there is

19  no dispute that plaintiff encountered architectural barriers at

20  Wayside Lumber that violated the standards set forth by the

21  ADAAG.  There is also no dispute that removal of these barriers

22  was readily achievable.  Plaintiff has therefore demonstrated

23  that defendants violated the ADA, see Champan, 639 F.3d at 945,

24  and, by extension, the UCRA, see Cal. Civ. Code § 51(f).

25       The UCRA ordinarily provides for minimum statutory

26  damages of $4,000 for each occasion on which a plaintiff

27  encountered one or more barriers to access.  Id. § 52(a).

28  Because plaintiff made two visits to Wayside Lumber, he contends

1   that he is entitled to an award of $8,000 in damages.  However,

2   plaintiff has also asserted a claim under the California Disabled

3   Persons Act, Cal. Civ. Code. § 54.1.  A plaintiff may not recover

4   damages under both the UCRA and the Disabled Persons Act.  Id. §

5   54.3(c); Munson, 46 Cal. 4th at 675.  Because the court has not

6   yet resolved plaintiff's claim under the Disabled Persons Act, it

7   is premature to award damages under the UCRA.

8           Moreover, there are two factual questions related to

9   damages that preclude summary judgment at this stage.[6]  First,

10  "in an action alleging multiple claims for the same construction-

11  related accessibility violation on different particular

12  occasions," California law requires the trier of fact to

13  "consider the reasonableness of the plaintiff's conduct in light

14  of the plaintiff's obligation, if any, to mitigate damages."

15  Cal. Civ. Code § 55.56(h).  Here, plaintiff indicates that he

16  visited Wayside Lumber on June 4, 2013 and June 20, 2013,

17  (Johnson Decl. ¶ 5), but provides no evidence that indicates he

18  alerted defendants to the barriers he encountered before he made

19  _____

20       [6]   Plaintiff has demanded a jury trial on "all claims for
    which a jury is permitted," including his UCRA claim.  (Compl. at
21  8.)  While plaintiff claims he seeks only statutory damages under
    the UCRA, a party's entitlement to, and the amount of, statutory
22  damages under the UCRA are determined by the trier of fact.  Cal.
    Civ. Code § 52(a); see Fair Hous. Council of San Diego v.
23  Penasquitos Casablanca Owner's Ass'n, 523 F. Supp. 2d 1164, 1177
    (S.D. Cal. 2007), rev'd on other grounds, 481 Fed. App'x 674 (9th
24  Cir. 2010) (noting that the jury calculated and awarded statutory
    damages under the UCRA).  And even if the amount of statutory
25  damages was generally a question for the court to determine, the
    question of whether plaintiff failed to mitigate his damages or
26  whether his conduct was reasonable are quintessential jury
    questions.  See, e.g., Passantino v. Johnson & Johnson Consumer
27  Prods., Inc., 212 F.3d 493, 508 (9th Cir. 2000) (characterizing
    failure to mitigate as a jury question).
28

                                    16

1  a second visit or that he expected the barriers to be removed

2  before he returned.  See Ramirez v. Sam's for Play Café, Civ. No.

3  11-1370 MEJ, 2013 WL 4428858, at *8-9 (N.D. Cal. Aug. 15, 2013)

4  (expressing skepticism about why plaintiffs "chose to visit the

5  Café three times in thirty days" despite the likelihood that they

6  would continue to encounter barriers to access).  Until the trier

7  of fact is permitted to determine whether plaintiff attempted to

8  mitigate his damages, it is premature for the court to award

9  multiple statutory damages at this juncture.  See id. at *9

10  (denying summary judgment on the issue of multiple statutory

11  damages).

12       Second, it is not clear what the minimum statutory

13  damages are.  While the Unruh Act ordinarily provides for a

14  minimum damage award of $4,000 for each visit, Cal. Civ. Code §

15  52(a), California law reduces this award to $2,000 if a defendant

16  corrects all construction-related violations within thirty days

17  of being served of the complaint and is a small business with

18  twenty-five or fewer employees and gross annual receipts of less

19  than $3,500,000.  Cal. Civ. Code. § 55.56(f)(2).  Neither party

20  has submitted any evidence that speaks to whether defendants

21  operate such a business.  The court therefore declines to assess

22  damages; it will instead permit the trier of fact to do so after

23  the parties have had the opportunity to present evidence on this

24  question.

25       IT IS THEREFORE ORDERED that plaintiff's motion for

26  summary judgment be, and the same hereby is, GRANTED on the

27  issues of defendants' liability under the Americans with

28  Disabilities Act, 42 U.S.C. §§ 12101 et seq., and the Unruh Civil

17

Rights Act, Cal. Civ. Code §§ 51 et seq., and DENIED on the issue
of damages.

Dated:  August 29, 2014

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

18