UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| SCOTT JOHNSON,<br><br>         Plaintiff,<br><br>     v.<br><br>WAYSIDE PROPERTY, INC., a California Corporation, and J&C M HOLDING, INC., a California Corporation,<br><br>         Defendants. | CIV. NO. 2:13-1610 WBS AC<br><br><u>MEMORANDUM AND ORDER RE: MOTION FOR ATTORNEY'S FEES AND COSTS</u> |

----oo0oo----

Plaintiff Scott Johnson is a quadriplegic and brought this action based on barriers he encountered at defendant Wayside Property, Inc., which is owned by defendant J&CM Holding, Inc. After the court granted partial summary judgment in favor of plaintiff, the parties settled the case for $6,000 and reasonable attorney's fees and litigation expenses. Unable to agree on the amount, plaintiff now requests the court to determine his award of attorney's fees and costs.

1

I.   Factual and Procedural History

Plaintiff filed this action on August 5, 2013 and asserted claims for (1) violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.; (2) violations of the Unruh Civil Rights Act ("UCRA"), Cal. Civ. Code §§ 51 et seq.; (3) violations of the California Disabled Persons Act, Cal. Civ. Code § 54; and (4) common-law negligence. Plaintiff alleged he encountered the following three barriers when visiting Wayside Property, Inc.: (1) inadequate handicap parking; (2) a "panel style" door handle; and (3) a counter that exceeded the maximum height of thirty-six inches.

Because the parties were unable to reach a settlement,[1] plaintiff filed a motion for summary judgment. The parties did not dispute that the inadequate handicap parking and "panel style" door handle constituted barriers under the ADA or that defendants had adequately remedied those barriers after plaintiff initiated this action. Defendants did not reduce the height of the counter, but instead argued they had provided an equivalent facilitation under the ADA by providing a clipboard and posting a sign offering assistance to handicap patrons. The court

---

[1] Over a period of several months, the parties engaged in unsuccessful attempts at settlement. Although plaintiff and defendants discuss the details of their settlement negotiations in the instant motion and attack each other as unreasonable during negotiations, the court does not find that the conduct of either party during settlement negotiations in this case should affect the award of attorney's fees. Defendants' suggestion that the court should reduce the amount of fees to the total fees at the time of plaintiff's highest settlement demand does not pass muster because it fails to account for the time plaintiff's counsel expended to prevail on plaintiff's motion for summary judgment and the instant motion seeking fees.

1  concluded that the clipboard was not an equivalent facilitation
2  and entered judgment in favor of plaintiff on his ADA and UCRA
3  claims, but found that disputed issues of fact prevented it from
4  determining the appropriate award of damages on plaintiff's UCRA
5  claim.  (Docket No. 20.)
6       Shortly after the court granted partial summary
7  judgment in favor of plaintiff, the parties settled the action
8  for $6,000 in damages and "reasonable attorney's fees and
9  litigation expenses, the amount of which may be determined by
10 noticed motion."  (Pl.'s Ex. 2 (Docket No. 25-4).)  Plaintiff's
11 motion for a determination of reasonable attorney's fees and
12 costs is now before the court.
13 II.  Discussion
14      Pursuant to 42 U.S.C. § 12205, a federal court may
15 award "a reasonable attorney's fee" to the prevailing party in an
16 action under the ADA.  42 U.S.C. § 12205; see also Cal. Civ. Code
17 §§ 52(a), 55 (authorizing an award of attorney's fees to a
18 prevailing party in suits brought under California civil rights
19 statutes).  A plaintiff prevails "when actual relief on the
20 merits of his claim materially alters the legal relationship
21 between the parties by modifying the defendant's behavior in a
22 way that directly benefits the plaintiff."  Farrar v. Hobby, 506
23 U.S. 103, 111-12 (1992).  Here, defendants do not dispute that
24 plaintiff was the prevailing party and is entitled to an award of
25 reasonable attorney's fees and costs under the parties'
26 settlement agreement, but argue that the $23,600 in fees and
27 $7,417.50 in costs plaintiff requests are unreasonable.
28      The court calculates a reasonable amount of attorney's

3

fees by following a two-step process.  First, the court determines the lodestar calculation--"the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  Second, the court may adjust the lodestar figure "pursuant to a variety of factors."  Gonzalez v. City of Maywood, 729 F.3d 1196, 1209 (9th Cir. 2013) (internal quotation marks omitted); see also Kerr v. Screen Guild Extras, Inc., 526 F.2d 67, 70 (9th Cir. 1975) (enumerating factors on which courts may rely in adjusting the lodestar figure).  There is a strong presumption, however, that the lodestar amount is reasonable.  Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1119 n.4 (9th Cir. 2000).

In determining the size of an appropriate fee award, the Supreme Court has emphasized that courts need not "achieve auditing perfection" or "become green-eyeshade accountants."  Fox v. Vice, --- U.S. ---, 131 S.Ct. 2205, 2217 (2011).  Rather, because the "essential goal of shifting fees . . . is to do rough justice," the court may "use estimates" or "take into account [its] overall sense of a suit" to determine a reasonable attorney's fee.  Id.

   A.   Lodestar Calculation
        1.   Hours Reasonably Expended

Plaintiff submits a billing statement itemizing the time spent by attorneys Mark Potter, Russell Handy, Raymond Ballister, Phyl Grace, and Amanda Lockhart.  (Pl.'s Ex. 3 (Docket No. 25-5).)  Along with generally characterizing the case as routine and boilerplate, defendants object to a number of particular time entries for senior attorneys Potter, Handy, and

4

Ballister.

A recurring objection to all three attorneys' billings is that the more experienced attorneys performed work that could have been performed by a less experienced associate. The Ninth Circuit has indicated, however, that a court "may not attempt to impose its own judgment regarding the best way to operate a law firm, nor to determine if different staffing decisions might have led to different fee requests." Moreno v. City of Sacramento, 534 F.3d 1106, 1115 (9th Cir. 2008). The Ninth Circuit explained,

> The district court may have been right that a larger firm would employ junior associates who bill at a lower rate than plaintiff's counsel, but a larger firm would also employ a partner--likely billing at a higher rate than plaintiff's counsel--to supervise them. And the partner in charge would still have had to familiarize himself with the documents, a step that plaintiff's counsel avoided by reviewing the documents herself. Moreover, lead counsel can doubtless complete the job more quickly, being better informed as to which documents are likely to be irrelevant, and which need to be examined closely. Modeling law firm economics drifts far afield of the Hensley calculus and the statutory goal of sufficiently compensating counsel in order to attract qualified attorneys to do civil rights work.

Id. at 1114-15. The court's task is thus to evaluate the reasonableness of the time expended by the billing attorney, not assess whether another attorney could have completed the task for the same or less expense.

### a. Billings by Potter

Defendants object to Potter's billing of 1.6 hours on January 11, 2014 for the following tasks: "Reviewed and analyzed the CASp report submitted by the defense; updated the Trial

Folder; some research on issues raised." (Pl.'s Ex. 3 at 2.) Although the 1.6-hour duration alone does not cause significant concern, the entry's vagueness as to what Potter researched prevents the court from assessing the reasonableness of the time expended. Updating a trial folder is also a clerical task for which an attorney should not bill a client. See Davis v. City & County of San Francisco, 976 F.2d 1536, 1543 (9th Cir. 1992) ("It simply is not reasonable for a lawyer to bill, at her regular hourly rate, for tasks that a non-attorney employed by her could perform at a much lower cost."); Bakewell v. Astrue, No. 3:10-CV-01525-JE, 2013 WL 638892, at *3 (D. Or. Jan. 9, 2013) ("[C]osts associated with clerical tasks are typically considered overhead expenses reflected in an attorney's hourly billing rate, and are not properly reimbursable."). Based on the vagueness as to what research Potter performed and the clerical work of an unknown duration, the court will reduce this entry to 1 hour.

Defendants next object to Potter's billing of 2.2 hours on June 17, 2014 for the following tasks: "Marshaled the evidence, created the photos exhibit and drafted the Separate Statement of Undisputed Fact." (Pl.'s Ex. 3 at 2.) The "photos exhibit" consists of eight photographs without any description or analysis, and plaintiff's Statement of Undisputed Facts contains 18 discrete facts that are copied, almost verbatim, from plaintiff's memorandum in support of his motion for summary judgment. (See Docket Nos. 11-2, 11-7, 11-8.) Except for a brief review by an attorney, these clerical tasks could easily be performed by a legal secretary or paralegal at most. See Missouri v. Jenkins by Agyei, 491 U.S. 274, 288 n.10 (1989);

1 Davis, 976 F.2d at 1543; Bakewell, 2013 WL 638892, at *3.
2 Accordingly, the court will reduce this entry to .5 of an hour to
3 account for Potter's time to select the appropriate photographs
4 and review the simple filings.
5        Defendants generally object to the 5.2 hours Potter
6 expended preparing the motion for summary judgment and the
7 memorandum in support of it and 3.3 hours Potter expended
8 researching whether the clipboard was an equivalent
9 accommodation.  The court agrees that .2 for preparing the
10 boilerplate notice of the motion, arguably a clerical task, is
11 excessive and will reduce that entry to .1.  With Potter's
12 substantive work on the summary judgment motion, however, the
13 court does not find that the time expended is clearly excessive,
14 especially because plaintiff prevailed on the motion and had to
15 respond to the court's request for supplemental briefing on
16 whether the clipboard was an adequate accommodation.
17        Potter also billed for an estimated 5 hours to prepare
18 the reply brief in support of the pending motion for attorney's
19 fees and an estimated 1 hour to prepare for and attend the oral
20 argument.  In plaintiff's reply brief, Potter did not indicate
21 the actual time spent in preparing plaintiff's reply brief.  The
22 court notes, however, that Potter expended only 2 hours in
23 preparing plaintiff's memorandum in support of his motion for
24 fees and finds that the same amount of time would be a reasonable
25 expenditure to prepare plaintiff's reply.  Because the court
26 determined that oral argument was unnecessary and vacated the
27 hearing, Potter did not have to expend any time preparing for or
28 attending oral argument.  The court will therefore reduce the

7

1  estimated entries to 2 hours.
2              b.  Billings by Handy
3           Defendants object to the 2.1 hours Handy billed for
4  public records research on July 28, 2013 on the basis that this
5  clerical task is not billable as attorney's fees.  In one of
6  plaintiff's recent and unrelated disability access cases, Potter
7  billed 2.1 hours for this precise task and the court concluded
8  that a significant aspect of the work was clerical in nature and
9  therefore reduced the entry by 1 hour.  See Johnson v. Allied
10 Trailer Supply, No. 2:13-CV-1544 WBS EFB, 2014 WL 1334006, at *2
11 (E.D. Cal. Apr. 3, 2014).  Handy does not distinguish the records
12 search performed in Allied Trailer Supply from the search
13 performed here and the court thus finds that a similar 1-hour
14 reduction is merited.
15          As to Handy's entry of 3.3 hours for traveling to and
16 attending the hearing on plaintiff's motion for summary judgment,
17 plaintiff's counsel have adequately accounted for Handy's time at
18 the oral argument, (Pl.'s Reply at 11:15-18), and plaintiff is
19 entitled to seek fees for reasonable travel time[2] to and from the
20 court, see Davis, 976 F.2d at 1543.  The court also does not find
21 that Handy's expenditure of 5.1 hours to research the clipboard
22 issue is clearly excessive because the court requested
23 supplemental briefing and plaintiff prevailed in obtaining
24 summary judgment on that issue.
25              c.  Billings by Ballister

---

[2]   Although CDA is located in San Diego, Potter billed only one hour for travel to and from the courthouse for the argument, (Pl.'s Reply at 11:19-21), which is not excessive when compared to the time local counsel may have expended on travel.

8

1          Defendants object to the 2.2 hours Ballister billed to
2    draft "plaintiff's written discovery: Requests for Admission;
3    Interrogatories; and Requests for Production."  (Pl.'s Ex. 3 at
4    5.)  Plaintiff's counsel recognize that "the basic template for
5    written discovery is the same in Title III barrier cases," but
6    argues that the 2.2 hours is reasonable because "these templates
7    must be modified in every case."  (Pl.'s Reply at 13:11-12.)
8    Although plaintiff's counsel indicate that this process involves
9    numerous steps, such as reviewing the investigator's findings,
10   photographs, and pleadings, Ballister's billing entry does not
11   indicate that he performed any of these tasks.  Because the
12   billing entry does not reflect any discrete tasks to fashion the
13   boilerplate discovery for the case at hand, the court will reduce
14   the entry by .5 of an hour.
15         Having made the above reductions, the court finds that
16   Potter reasonably expended 28.6 hours; Handy reasonably expended
17   12.8 hours; Ballister reasonably expended 2.5 hours; Grace
18   reasonably expended 2.3 hours; and Lockhart reasonably expended
19   6.1 hours.
20              2.   Reasonable Hourly Rate
21         The court must multiply the reasonable hours expended
22   in this litigation by a reasonable hourly rate to calculate the
23   lodestar amount.  To determine the reasonableness of the hourly
24   rates claimed, the court looks to "the prevailing market rates in
25   the relevant community," Blum v. Stenson, 465 U.S. 866, 895
26   (1984), "for similar work performed by attorneys of comparable
27   skill, experience, and reputation."  Chalmers v. City of Los
28   Angeles, 796 F.2d 1205, 1210-11 (9th Cir. 1986).  In general,

1  "the relevant community is the forum in which the district court
2  sits." Barjon v. Dalton, 132 F.3d 496, 500 (9th Cir. 1997).  The
3  burden is on the party seeking fees "to produce satisfactory
4  evidence . . . that the requested rates are in line with those
5  prevailing in the community for similar services by lawyers of
6  reasonably comparable skill, experience and reputation." Blum,
7  465 U.S. at 895 n.11.
8       Plaintiff's counsel seek hourly rates of $425 for
9  Potter, Handy, and Ballister, $225 for Grace, and $175 for
10 Lockhart.  All of the attorneys practice at Center for Disability
11 Access ("CDA"), which is located in San Diego, California.
12 Potter is the managing partner of CDA, has litigated over 2,000
13 disability cases, and has devoted more than 95% percent of his
14 practice to "disability issues" for almost 21 years.  (Potter
15 Decl. ¶¶ 2, 14.)  Handy is also a partner at CDA and has
16 practiced disability litigation for at least 16 years.  (Id. ¶
17 15; Pl.'s Mem. at 28.)  Ballister is an associate at CDA who has
18 been in practice for 31 years and has focused exclusively on
19 disability access cases for the past 10 years.  (Potter Decl. ¶
20 16; Pl.'s Mem. at 8:2.)  Grace is an associate at CDA with 20
21 years of experience and has maintained an exclusive disability
22 access practice for the past 3 years.  (Potter Decl. ¶ 17.)
23 Lockhart is an associate at CDA and was admitted to the practice
24 of law in June 2013.  (Id. ¶ 18); see www.calbar.org (last
25 visited Nov. 11, 2014).
26      Only seven months ago, in an unrelated ADA case brought
27 by plaintiff, this court examined fee awards in relevant cases
28 and found that hourly rates of $300 for Potter and Ballister and

10

$175 for Grace were reasonable for disability access cases in the Sacramento legal community.  See Allied Trailer Supply, 2014 WL 1334006, at *4-5.  In Allied Trailer Supply, plaintiff's counsel also sought hourly rates of $425 for Potter and Ballister and $270 for Grace.  Similar to the fees motion at hand, plaintiff's counsel relied on cases outside of this district to support the hourly rates they requested. As the court emphasized, "Comparisons to cases citing prevailing hourly rates in the Central District and Southern District are irrelevant to the determination of prevailing rates in the Eastern District." Id. at *4.

"The hourly rate for successful civil rights attorneys is to be calculated by considering certain factors, including the novelty and difficulty of the issues, the skill required to try the case, whether or not the fee is contingent, the experience held by counsel and fee awards in similar cases." Moreno, 534 F.3d at 1114.  While disability access cases are a subset of civil rights practice, it would be naive to equate the level of skill required to litigate a routine disability access case with the level of skill required to successfully litigate a more complicated civil rights case raising novel or complicated constitutional issues.

Here, plaintiff's counsel recognize that the "basic template for written discovery is the same in Title III barrier cases" and that counsel were "working from templates" when preparing the briefs in support of plaintiff's motion for summary judgment.  (Pl.'s Reply at 8:27-28, 13:11-12.)  Plaintiff's counsel also indicate that the case at hand "did not present

11

1  specialized or skillful challenges and was a fairly straight-
2  forward application of the law" without any "significant legal
3  issues of first impression."  (Pl.'s Mem. at 11:18-19, 12:22-24.)
4         This is not to discredit the importance of disability
5  access cases, but only to recognize that civil rights is a broad
6  area of practice and the reasonable hourly rate merited in
7  routine disability access cases understandably falls below the
8  hourly rate charged in other more complicated civil rights cases.
9  Even within the context of the ADA, more complicated employment
10 cases may merit a higher fee than the reasonable fee in the
11 hundreds of routine disability access cases pending in this
12 district.  See, e.g., Ramirez v. Merced County, Civ. No. 1:11-531
13 AWI DLB, 2013 WL 4780440, at *8-9 (E.D. Cal. Sept. 5, 2013)
14 (awarding, in the Fresno Division, hourly rates of $325 to an
15 attorney with over 30 years of experience and $250 hourly rate to
16 an attorney with 15 years of experience in a more complicated ADA
17 employment case).
18        Unsatisfied with the court's recent determination as to
19 the reasonable hourly rates for routine disability access cases
20 in the Sacramento legal community, plaintiff's counsel offer new
21 evidence in support of their requested rates.  Plaintiff's
22 counsel does not, however, cite to any new cases finding that a
23 reasonable hourly rate in Sacramento for an attorney litigating a
24 routine disability access case against a private company exceeds
25 $300 for a partner or $175 for an associate.  Nor do counsel
26 provide any new evidence showing that Sacramento attorneys
27 representing plaintiffs in routine disability access cases charge
28 rates in excess of the rates the court found reasonable in Allied

1  Trailer Supply.

2         Instead, plaintiff's counsel rely heavily on their
3  retained "attorneys' fee expert," attorney John O'Connor.  While
4  some courts have found O'Connor's testimony about hourly rates
5  helpful or persuasive, (see O'Connor Decl. ¶¶ 17-21 (citing
6  cases)), his declaration in this case is not helpful in
7  determining the reasonable rates for counsel.  O'Connor opines
8  that "[a] rate of $450 to $500 per hour is what [he] would
9  determine to be the standard rate for a twenty year attorney at a
10 reputable firm in the Northern California legal market."
11 (O'Connor Decl. ¶ 25.)  As this court emphasized in Allied
12 Trailer Supply, however, the relevant market here is Sacramento,
13 not Northern California.  It is without question that the rates
14 in the nearby San Francisco legal community exceed those in this
15 legal community.  While O'Connor identifies fees awarded in
16 Sacramento or surrounding counties, none of the cases were
17 disability access cases or in federal court.  (See id. ¶¶ 27-30.)

18         O'Connor next posits that the court should utilize the
19 Laffey Matrix that is maintained by the Department of Justice in
20 Washington, D.C. to determine the reasonable hourly rates for
21 this case.  The suggested Laffey Matrix rate contemplates
22 practice in the Washington, D.C. legal community and has been
23 rejected as an adequate tool to assess market rates in this
24 district.  See Fitzgerald v. Law Office of Curtis O. Barnes, No.
25 1:12-CV-00071-LJO-GAS, 2013 WL 1627740, at *3 (E.D. Cal. Apr. 15,
26 2013), findings and recommendation adopted, 2013 WL 1896273 (E.D.
27 Cal. May 6, 2013) (concluding that the Laffey Matrix is
28 "irrelevant to determining reasonable hourly rates for" counsel

13

in the Eastern District of California).  The Laffey Matrix also fails to account for differences in hourly rates depending on the area of practice.

O'Connor nonetheless suggests that the Laffey Matrix can be adjusted for the Sacramento legal community by relying on the 2014 federal locality pay differentials.  Under these locality pay differentials, federal judicial employees in the Washington-Baltimore area receive a +24.22% locality pay differential, while federal judicial employees in Sacramento receive a +22.20% locality pay differential, or 1.6% less.  Taking this difference, O'Connor proposes to reduce the Laffey Matrix rates by 1.6% to account for practice in the Sacramento legal community.  O'Connor fails, however, to explain or cite any authority suggesting that the locality pay differential for federal judicial employees, which includes non-lawyers, is related to the difference in hourly rates for private practice in different legal communities.  In fact, O'Connor states, "It has been my experience that the rate structure of the San Francisco Bay Area is virtually identical to that in the greater Los Angeles area."  (O'Connor Decl. ¶ 11.)  Despite the similarity in rates in Los Angeles and San Francisco according to O'Connor, the locality pay differential for Los Angeles is 27.16% and the locality pay differential for San Francisco is 35.15%.  The court is thus not persuaded that a reduction based on the federal locality pay differential is a reliable method to adjust the Laffey Matrix rates for a different legal community.

Lastly, O'Connor indicates he is "well aware" of the rates charged by national "labor specialty firms" such as Jackson

Lewis and Littler Mendelson and the local firm Downey Brand. (Id. ¶ 34.) He indicates that the rates the partners seek in this case are less than the rates those firms charge for partners. (Id.) O'Connor does not suggest, however, that the "labor specialty firms" or Downey Brand handle routine disability access cases or, even assuming they do, identify the rates charged to individual plaintiffs in those cases.

Plaintiff's counsel also urge the court to rely on the "2014 Real Rate Report: The Industry's Leading Analysis of Law Firm Rates, Trends, and Practices," which is published by CEB and Datacert | TyMetrix. (Pl.'s Ex. 12 (Docket No. 25-14).) The Real Rate Report evaluated fees paid by 90 companies to more than 5,600 law firms and is specifically designed for lawyers who work for "corporate clients." (Id. at viii.) The Real Rate Report also recognizes that rates vary based on the practice area, (id. at vi), and includes reductions to hourly fees for numerous corporate practice areas, but does not address disability access practice, (id. at 29). The Real Rate Report thus cannot provide a helpful benchmark for lawyers litigating disability access cases for non-corporate clients.[3]

Despite their creative efforts to justify their hourly rates, plaintiff's counsel have not cited a single a case from the Sacramento Division of the Eastern District or provided an affidavit of a Sacramento attorney representing plaintiffs in

---

[3] Notwithstanding the inapplicability of the Real Rate Report to the case at hand, it supports only the $425 fee requested for Potter, as plaintiff indicates it would suggest hourly rates of $418.64 for Handy and $381.67 for Ballister. (Pl.'s Mem. at 7:21-8:2.)

15

routine disability access cases that supports the rates they seek.  As it found only seven months ago, the court again finds that the reasonable hourly rate for Potter is $300.  The court also finds that $300 is a reasonable hourly rate for Handy as he is a partner with similar experience and expertise as Potter.

With regard to Ballister, the court mistakenly assumed based on his 31 years of experience with 10 years exclusive to disability access cases that he was a partner when it found that $300 per hour was a reasonable rate for his time in Allied Trailer Supply.  2014 WL 1334006, at *6.  Ballister, however, is not a partner at CDA.  (Pl.'s Mem. at 8:1-2.)  Based on his lengthy experience, the court nonetheless finds that a reasonable rate for his services would be comparable to that of a junior partner and therefore finds that he should be compensated at a rate of $260 per hour.  See Lehr v. City of Sacramento, No. 2:07-CV-01565 MCE GGH, 2013 WL 1326546, at *8 (E.D. Cal. Apr. 2, 2013) (recognizing that junior partners with 7-10 years of experience practicing civil rights law routinely received rates between $230 and $260 in the Eastern District).

Consistent with the court's finding in Allied Trailer Supply, a reasonable rate for Grace is $175, which is the "higher end for associates in Sacramento."  Allied Trailer Supply, 2014 WL 1334006, at *6; see also Joe Hand Promotions, 2013 WL 4094403, at *3 ("The court's independent research shows that a reasonable rate for associates working in this community is between $150 and $175 per hour.").  Lockhart has been practicing for less than two years and the court therefore finds that a reasonable hourly rate for her services is at the lower end for associates at $150 per

hour.

Accordingly the lodestar in this case is $14,387.50, calculated as follows:

| | | | | | | |
|---|---|---|---|---|---|---|
| Potter | 28.6 | x | $300 | = | $ | 8,580.00 |
| Handy | 12.8 | x | $300 | = | $ | 3,840.00 |
| Ballister: | 2.5 | x | $260 | = | $ | 650.00 |
| Grace: | 2.3 | x | $175 | = | $ | 402.50 |
| Lockhart: | 6.1 | x | $150 | = | $ | 915.00 |
| | | | | | $14,387.50 | |

Because neither plaintiff nor defendants seek a multiplier or reduction to the lodestar and there is "strong presumption that the lodestar amount is reasonable," Fischer, 214 F.3d at 1119 n.4, the court finds that no further adjustment to the lodestar is warranted.[4]

B. Costs

Plaintiff also seeks costs in the amount of $6,727.50 for the work of their "attorney's fees expert," which consists of 9.5 hours at $545 per hour for O'Connor and 6.2 hours at $250 per hour for Jessica Shafer. As a general matter, the court seriously questions the use and necessity of an "attorney's fees expert" in a routine fees motion. In prior motions, parties have simply submitted declarations from local counsel practicing in

---

[4] Although plaintiff's counsel do not seek an adjustment to the lodestar, they address the relevant factors under Kerr. As to the undesirability of the case, counsel indicate that the "clientele is largely (as in the present case) very low income or indigent." (Pl.'s Mem. at 14:24-25.) It is an insult to the intelligence of this court to suggest that the plaintiff in this case is "low income or indigent" based on the hundreds of disability access cases he has successfully brought in this court alone.

17

the relevant area indicating their hourly rates.  Declarations from Sacramento attorneys who represent plaintiffs in routine disability access cases would have been far more helpful in this case than O'Connor's "expert opinion."  As the court explained above, O'Connor's assessment of the reasonable hourly rates in this case relied on faulty assumptions and was not based on rates in the relevant practice area and legal community.

Here, plaintiff also expended $6,727.50 in an effort to gain approximately $5,970 in additional fees.  The court does not find it reasonable to incur costs at more than or equal to the amount in dispute and then request the defendants to bear the burden of that questionable economic decision.  Unlike with more commonly utilized experts, an attorney serving as an expert on attorney's fees also seems to replace work that the counsel seeking fees could have performed.  Plaintiff's description of O'Connor's work as marshaling the evidence to present it to the court, (Pl.'s Reply at 6:7-8), is precisely the legal work that plaintiff's counsel, or even a paralegal, could have performed, and retaining an "expert" attorney to do so was wasteful and unnecessary.[5]  This even more outrageous when, as here, the expert charged an hourly rate that exceeds the reasonable rate for plaintiff's lead counsel by $245 per hour.  Accordingly, because the court finds that the expenditure of $6,727.50 in

---

[5] Plaintiff's counsel appear to conflate the "attorney" time they spent in preparing the motion for attorney's fees with the "attorney" time of their "expert," arguing that they should recover the expert fees as costs because "[a] plaintiff is 'entitled to attorney fees for preparing th[e] fee motion.'"  (Pl.'s Reply at 7:9-11 (quoting Blackwell v. Foley, 724 F. Supp. 2d 1068, 1080 (N.D. Cal. 2010)).)

18

1  costs for the expert testimony of O'Connor was unnecessary,
2  unreasonable in light of the amount at issue, and unhelpful in
3  determining the reasonable hourly rate for a disability access
4  attorney in Sacramento, the court will not require defendants to
5  reimburse plaintiff for those costs.
6         Plaintiff also seeks costs in the amount of $690 for
7  expenses related to plaintiff's investigation, filing fee, and
8  service fees.  (See Pl.'s Ex. 3 at 1.)  Defendants do not object
9  to these costs and the court will therefore award them to
10 plaintiff.
11    IT IS THEREFORE ORDERED that plaintiff's motion for
12 attorney's fees be, and the same hereby is, GRANTED in part.
13 Defendants are directed to pay $14,387.50 in fees and $690 in
14 costs to plaintiff.
15 Dated:  November 20, 2014

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

19